## STATE v. ALVIN O. LEUZINGER.[1]

January 9, 1931.

No. 28,251.

*J. H. Caswell* and *A. J. Rockne,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Chester S. Wilson,* Assistant Attorney General, and *Thomas H. Quinn,* County Attorney, for the state.

[1]Reported in 234 N. W. 308.

Loring, J.

The defendant, having been convicted of grand larceny in the first degree, appeals to this court from the order of the trial court denying his motion for a new trial.

In 1927 the defendant was president of the State Bank of Webster, Minnesota. He was also vice president of the Citizens State Bank of St. Paul and president of the First National Bank of Forest Lake, Minnesota, of which his brother was the cashier. The defendant was heavily in debt to the bank at Forest Lake, and the national bank examiners were urging that his notes to that bank and those of his relatives and associates be taken up. Accordingly, in the latter part of May of that year he paid approximately $10,000 of indebtedness to that bank. He did so in part by drawing a check on the Citizens State Bank of St. Paul and in part by causing a draft to be made through the State Bank of Webster on Olaf Docken, cashier of that bank, for a note owed by Docken to the Forest Lake bank. Five thousand two hundred dollars of his indebtedness to the Forest Lake bank he paid by giving his own personal check on the State Bank of Webster. This check was sent by the Forest Lake bank to its correspondent bank at Mankato and by that bank to the First National Bank of Minneapolis, which then sent it by cash-letter direct to the State Bank of Webster where it arrived on or about June 4, 1927. The defendant had no checking account in the bank at Webster and had not had one since March, 1927. Accordingly, upon the arrival of the check at Webster the bank held the cash-letter until the defendant's arrival at Webster, which occurred about June 7. Defendant then directed Olaf Docken, his cashier at Webster, to charge the check to the account of the Webster Co-operative Dairy Association, usually referred to in the record as the "creamery account." The defendant was an officer of the dairy association but had no authority to draw his personal check against the association's account although he drew checks on that account for creamery purposes. To pay the cash-letter received from the First National Bank of Minneapolis, the State Bank of Webster then drew a draft on the First National Bank of St.

Paul where it had an account. This draft covered the check of $5,200 which the defendant had made payable to his brother at Forest Lake with which he had taken up his own and his relative's indebtedness to that bank. It is for the larceny of this $5,200 from the State Bank of Webster that the defendant was indicted and convicted.

The principal question raised by this appeal is whether or not the trial court should have instructed the jury that the cashier and assistant cashier of the State Bank of Webster, witnesses against the defendant, were as a matter of law his accomplices in the commission of the offense charged and therefore that their testimony must be corroborated in order to sustain the conviction. The cashier was the man who received the instructions from the defendant to charge the check to the creamery account and the one who drew the draft on the St. Paul bank to pay the cash-letter of the Minneapolis bank which included the $5,200 check in question. The assistant cashier was present and heard the instruction given and himself charged the check against the creamery account. Both men admitted that they knew that compliance with defendant's instructions was "wrong."

The defendant denies that he ever gave any such instructions. He said that he drew the check pursuant to an arrangement that he had made with Docken by which Docken was to sell the defendant's stock in the State Bank of Webster and take care of the $5,200 check out of the proceeds. If the state's theory of the case was correct and if the testimony introduced by it was true, then certainly the cashier, Docken, was an accomplice of the defendant, and for the purposes of this opinion we shall assume that the assistant cashier, Grieger, was also an accomplice.

The court charged the jury that the test as to whether or not the cashier and assistant cashier were accomplices was determined by whether or not they could be indicted and punished as principals on the same charge here made against the defendant, and the court said:

"I submit that question to the jury as a question of fact for you to determine whether or not Docken and Grieger are accomplices.

And you have only at this time that question in determining the evidence against this defendant, because, as I have stated, you cannot find this defendant guilty if you find that Docken and Grieger were accomplices of the defendant; you cannot find the defendant guilty upon the uncorroborated testimony of accomplices. While the corroborating evidence—and there must be corroborating evidence before you may find the defendant guilty—while the corroborating evidence must be such as tends to show some connection of the defendant with the acts constituting the crime charged, yet it is not necessary that there should be corroboration as to every probative fact."

At the close of the charge and in the presence of the jury the court made the usual request of counsel to call attention to any inadvertencies on the part of the court in its instructions. To this request one of the counsel for the defendant responded as follows:

"On the matter of the test of an accomplice, I think the court said in substance that the test was whether or not he might be prosecuted for the same offense. We think it would not be necessary that he appropriated the money to his own use. The question might arise in the minds of the jury on the matter of an accomplice as to whether he should have taken the money for his own use before he could be held as an accomplice. We think that it is not quite clear and should be cleared up. The jurors might think that Docken and Grieger weren't accomplices because the money was not taken for their own use.

The Court: "Well, if they helped to take it, they would be accomplices. Was that your thought on it?

Counsel: "Yes, sure. I was just thinking that the way the court stated it, that the test of an accomplice is as to whether or not he might be prosecuted for the same offense and—

The Court: "Well, if they helped him to take it of course they would be accomplices."

And then, after distinguishing between accomplices and accessories after the fact, the court said:

"In other words, they would be principals to the crime, but we call them accomplices in a case of this sort, if you should find that the crime was committed and that these other men helped the defendant commit the crime."

It therefore appears that the defendant's counsel acquiesced in the submission of the question to the jury as to whether or not Docken and Grieger were accomplices of the defendant. Moreover, in effect the court charged that if the state's theory was true they were accomplices.

■ Was there sufficient evidence corroborating the testimony of Docken and Grieger to sustain the conviction upon the theory that they were accomplices of the defendant? The books of the bank and the indorsements on the check showed that the defendant drew this check on the Webster bank without funds to meet it. His brother testified to the payment of his personal obligations at Forest Lake with this check, and the books of the Webster bank showed the issuance of a draft by it against its account in the First National Bank of St. Paul to take up the cash-letter which included this check. The circumstances in connection with the subsequent transfer and sale of defendant's stock in the Webster bank indicated that he was not telling the truth about the arrangement with Docken. No note or other evidence of indebtedness was given against which this check might be charged until the stock could be realized upon. No other possible course was open to Docken than to await the instructions of his superior or else to turn the check back unpaid. The books show that the cash-letter from Minneapolis was held for three or four days before it was paid by draft. If defendant's version is true this would probably not have been done. This is a circumstance tending to corroborate Docken and Grieger. The proceeds of stock sold to Dr. Lexa were appropriated by defendant as if no such arrangement as he claims had existed. Later, in an interview at the office of the state commissioner of banks, he denied recollection of having drawn the check. The bank's books show that Grieger credited to the creamery account in November, 1927, the purchase price of the stock he bought from defendant amounting to $3,500.

That this was done without defendant's knowledge of the situation is improbable in the extreme and tends to support Docken and Grieger in their claim that the charging of the check to the creamery account was at defendant's order. Upon the whole record we are of the opinion that sufficient corroboration of the accomplices' testimony was offered to sustain the verdict.

The order appealed from is affirmed.